EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: emilyrose@siegelyee.com

DEBORAH M. GOLDEN, *Pro Hac Vice Forthcoming*
THE LAW OFFICE OF DEBORAH M. GOLDEN
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
Telephone: (202) 630-0332
Email: dgolden@debgoldenlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.M.F., | ) Case No. |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES AND JURY** |
| | ) **DEMAND** |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA; DARRELL | ) |
| SMITH, in his individual capacity; FRASER | ) |
| COHEN his individual capacity, | ) |
| | ) |
| Defendants. | ) |

## INTRODUCTION

1. J.M.F. served a sentence in the Bureau of Prisons and was housed at Federal Corrections Institution Dublin ("FCI Dublin"), known openly at the time as "the Rape Club," for nearly three years.

2. While housed at FCI Dublin, J.M.F. was horrifically sexually abused and raped by multiple correctional officers, resulting in long-lasting traumatization.

///

## JURISDICTION AND VENUE

3. An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).

4. This action involves claims arising under United States and California laws. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

5. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

6. Assignment is appropriate in the Oakland Division of this Court because that is where "a substantial part of the events or omissions giving rise to the claim[s] occurred." Furthermore, several related cases have already been assigned to District Judge Yvonne Gonzalez Rogers, and Plaintiff J.M.F. will be filing an administrative motion to relate this case to those other cases.

## PARTIES

7. Plaintiff J.M.F. was at all times relevant here incarcerated in FCI Dublin.

8. Defendant United States of America Federal Bureau of Prisons ("BOP") is a governmental entity that operates and is in possession and control of the Federal Correctional Institute Dublin ("FCI Dublin"). FCI Dublin is a federal female low-security correctional institution.

9. Defendant Darrell Smith was at all times relevant hereto a Correctional Officer at FCI Dublin. He is sued in his individual capacity.

10. Defendant Fraser Cohen was at all times relevant hereto a Paramedic at FCI Dublin. He is sued in his individual capacity.

11. While acting and failing to act as alleged herein, Defendant United States had complete custody and total control of Plaintiff J.M.F. Plaintiff J.M.F. was dependent upon Defendant United States for her personal security and necessities.

12. In performing the acts and/or omissions contained herein, Officer Nicholas Theodore Ramos, now deceased, and Defendants Smith and Cohen acted under color of federal law, and Plaintiff J.M.F. is informed and believes each acted maliciously, callously, intentionally,

recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff J.M.F. Each knew or should have known that their conduct, attitudes, actions, and omissions were, and are, a threat to Plaintiff J.M.F. and to her constitutionally and statutorily protected rights. Despite this knowledge, Defendant United States failed to take steps to protect Plaintiff J.M.F. and to ensure her rights to safety from sexual abuse.

**FACTS**

13.    Plaintiff J.M.F. was incarcerated at FCI Dublin from 2018 through 2022.

14.    From 2018 to 2020, Plaintiff J.M.F. was abused at FCI Dublin by Correctional Officer Nicholas Theodore Ramos, Correctional Officer Darrell "Dirty Dick" Smith, and Paramedic Fraser Cohen.

15.    Plaintiff J.M.F. has a seizure disorder.

16.    During the summer of 2019, she had a seizure coming out of the dining hall.

17.    She fell to the ground convulsing.

18.    Officer Ramos was in the vicinity and upon observing her, he kicked her body with his foot, told her there was nothing wrong with her, and instructed her to get up.

19.    She experienced his kick as she was coming out of her seizure and postictal, and his kick caused bruising on her body.

20.    Defendant Cohen responded and took Plaintiff J.M.F. to a medical area where he performed an examination on her.

21.    The examination was intrusive and inappropriate, and he intentionally exposed her breasts during the examination for his own sexual gratification as well as that of Ramos.

22.    Ramos was in the doorway of the examination room, and he was smiling as Plaintiff J.M.F.'s breasts were exposed.

23.    Plaintiff J.M.F. had a second seizure that summer, to which Defendant Cohen responded.

24.    He again took her to a medical area where he intentionally and unnecessarily exposed her breasts and genitals for his own sexual gratification.

25.    There was no medical reason to expose Plaintiff J.M.F. in this manner.

26.     Following her first seizure, Officer Ramos began searching Plaintiff J.M.F.'s room frequently and disproportionately to other women in her unit.

27.     She felt targeted and harassed by his conduct.

28.     During his targeted searches, he would always destroy her religious altar.

29.     He threw away her religious materials, her clothes, and her commissary items that she was permitted to have and that she purchased herself.

30.     Ramos harassed her through the searches and mocked her for her seizures.

31.     On one occasion, when Plaintiff J.M.F. was in the SHU, she reported to Ramos that she was feeling a seizure coming on and asked for medical assistance.

32.     Ramos handcuffed her with her hands behind her back so that she could not brace herself if she fell due to convulsions.

33.     When she began convulsing, she fell down on the concrete floor of the SHU face-first. She experienced significant bruising from the fall.

34.     When a nurse responded, she admonished Officer Ramos for handcuffing Plaintiff J.M.F., telling him it was not appropriate. He did not seem to care.

35.     At the beginning of 2020, Ramos encountered Plaintiff J.M.F. and her cellmates with contraband.

36.     He ordered Plaintiff J.M.F.'s cellmate out of the room, and she complied.

37.     When alone with Plaintiff J.M.F., he told her that he would not write her up if she would have sex with him.

38.     She declined but worried about reporting him for this because she feared harsher punishment.

39.     After this encounter and shortly before COVID lockdown, Ramos found Plaintiff J.M.F. in her cell alone, sleeping.

40.     He entered her cell and woke her up.

41.     He stood over her, unzipped his pants, and told her that she knew what she had to do.

42.     He then grabbed her by her hair.

*J.M.F. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 4

43. Holding the cell door closed with one hand and holding her hair with the other, he forced his penis into her mouth and forced her to perform oral sex on him.

44. The force he used caused her to choke on his penis.

45. When he was finished, he pulled up his pants and left.

46. He told Plaintiff J.M.F. that she had better not say anything.

47. Plaintiff J.M.F. did not tell anyone. She feared worse sexual assault, retaliation and that she would not be believed.

48. This sexual abuse caused Plaintiff J.M.F.'s mental health to spiral.

49. She could not stand being in her own mind.

50. Drugs, although contraband in prison, were easily available due to corruption of the staff.

51. Plaintiff J.M.F. began using drugs again to escape.

52. This only got worse during COVID lockdown.

53. During COVID lockdown, Plaintiff J.M.F. was moved into a room with three women who were predominantly Spanish-speaking.

54. Plaintiff J.M.F. speaks both English and Spanish.

55. There, Ramos did not have as much access to her, and his abuse of her subsided for a few months.

56. However, Officer Darrell "Dirty Dick" Smith had access to her in that unit.

57. Defendant Smith was notorious. He would always wear his shirt open to expose his chest and a gold chain he wore on his neck.

58. He called Plaintiff J.M.F. derogatory and racist names like "wetback" and "spick."

59. Defendant Smith appeared sexually interested in the women with whom Plaintiff J.M.F. was confined.

60. When he would come to her cell, he would grab his penis and testicles and stare at the women.

61. He told Plaintiff J.M.F. to translate his sexual desires to her cellmates.

62. He instructed her to tell them that they should strip for him or have sex with each other in order to get favors from him.

63. He told her that that he spent a lot of money on strippers and prostitutes in Tijuana.

64. She declined to translate for him, but she felt deeply uncomfortable and afraid of how Defendant Smith might react.

65. On one occasion, Officer Smith used threats and intimidation to force her to perform oral sex on him.

66. One to two months into COVID lockdown, Plaintiff J.M.F. was moved into another unit, and Ramos began coming around Plaintiff J.M.F. again.

67. When he saw her, he threatened Plaintiff J.M.F., telling her he would "deal with her later." This terrified Plaintiff J.M.F.

68. He began taunting her again and refused to bring her food or let her out of the cell to shower.

69. Plaintiff J.M.F. was confined for a year with no commissary, very little food, sometimes to the point that she felt like she was starving, with no hygiene products, no stamps, and no phone to reach the outside world.

70. She observed a lot of K-2 and other drugs in the unit, all of which kept the prisoners sedate during these horrible conditions.

71. Plaintiff J.M.F. was moved again, and it was in this new cell that Ramos targeted her for severe sexual abuse.

72. After this move, Plaintiff J.M.F. was in the room by herself when Ramos entered and stood by the door holding it closed with one hand.

73. Ramos slapped her in the face with an open hand.

74. Plaintiff J.M.F. froze.

75. Officer Ramos forcefully bent her over the sink and vaginally raped her.

76. Plaintiff J.M.F. did not have the ability to fight him off.

77. Between October 2020 and mid-2021, Officer Ramos vaginally raped Plaintiff J.M.F. on six or seven occasions, always coming into her room and forcing himself upon her.

78. On one occasion, he raped her anally.

79. On another occasion, near Christmas 2020, she objected to his tearing down her religious altar.

80. Officer Ramos responded by physically forcing her to perform oral sex on him.

81. Ramos was always verbally and physically violent as he sexually abused Plaintiff J.M.F.

82. He would slap her in the face and push her around aggressively.

83. He would call her a "drug addict whore," a "junkie," and a "stupid bitch," among other derogatory names.

84. He told her that she was nothing and worthless.

85. Plaintiff J.M.F. was paroled from Dublin.

86. She did not tell anyone about any of the abuse because she feared retaliation while on supervised release and because she was so traumatized and overcome with fear and self-hatred after what he did to her.

87. Plaintiff J.M.F. did not complete the terms of supervised release and was sent back to the custody of the BOP, where she experienced severe PTSD symptoms.

88. She was at that point sent back to FCI Dublin.

89. She was too afraid to shower because the lighting was poor in the corridor, she could not fall asleep in the dark, she could not pray because she would experience flashbacks of Ramos' abuse, and she had constant thoughts about suicide.

90. She worked in the kitchen, and there, when she would use the bathroom, an officer in the kitchen would open the stall door while she was exposed. She would go hours and hours without using the bathroom in order to avoid his voyeurism.

91. The abuse intensified her PTSD symptoms, and she was on the verge of committing suicide.

92. She reported the abuse at FCI Tallahassee to the warden and to another female investigator.

93. She included the abuse she suffered at the hands of Ramos.

94. Following her reports, she was not given any help, and she continued to experience abuse from the officer in the kitchen.

95. She also witnessed how Plaintiff T.C. from case number 4:23-cv-06330-YGR, who was also incarcerated at FCI Tallahassee at the time, experienced what appeared to be retaliation for reporting abuse at Dublin.

96. After her first legal call with undersigned counsel, her cell was destructively searched and she was taken to the S.H.U.

97. The Captain made a point of throwing her notebook with her legal notes on the floor, saying, "I don't give a fuck. Fuck you and your lawyer."

98. These experiences reinforced for Plaintiff J.M.F. that she would not be believed or receive help as a victim of sexual abuse.

99. Plaintiff J.M.F. quit the kitchen and became further isolated, causing her thoughts of suicide and symptoms of PTSD to increase.

100. She remains incarcerated, still fears retaliation, and still experiences symptoms of PTSD that negatively impact her every day.

## EXHAUSTION

101. On July 15, 2024, Plaintiff J.M.F., through counsel, mailed an administrative claim under the FTCA to the BOP's Western Regional Office.

102. The BOP acknowledged receipt on July 30, 2024.

103. The BOP has not substantively responded to her claim.

## EQUITABLE TOLLING

104. Plaintiff J.M.F. is entitled to equitable tolling for her FTCA Claim received by the BOP on July 30, 2024.

105. The FTCA's statute of limitations is subject to equitable tolling. *United States v. Wong*, 575 U.S. 402, 420 (2015).

106. Equitable tolling applies when 1) a plaintiff pursued their rights diligently, and 2) extraordinary circumstances prevented timely filing. *Wong v. Beebe*, 732 F. 2d 1030, 1052 (9th Cir. 2013).

*J.M.F. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 8

107.   Courts have long recognized that survivors of sexual abuse may be entitled to equitable tolling where trauma, fear, retaliation, and coercion prevented timely filing. *See e.g., Su v. United States*, No. 4:25-cv-00329-YGR (N.D. Cal. Sept. 3, 2025), ECF No. 24; *Stoll v. Runyon*, 165 F. 3d 1238, 1242 (9th Cir. 1999) (equitable tolling is appropriate where sexual abuse and post-traumatic stress disorder rendered the plaintiff unable to timely pursue claim).

108.   Plaintiff J.M.F. clearly faced extraordinary circumstances, preventing the timely filing of her FTCA claim.

109.   Plaintiff J.M.F. remains incarcerated within the BOP, with only a brief stint in a halfway house in 2024. She continues to experience extraordinary circumstances preventing her from freely accessing the courts or safely pursuing her claims. During her brief release, she was able to retain the undersigned who diligently filed a claim on her behalf. However, as long as she remains under BOP custody and control, the threats, coercion, and fear of retaliation continue to silence her.

110.   A court-appointed Special Master confirmed that during the time of Plaintiff J.M.F.'s incarceration, "there was no safe or consistent path women could take to file sex abuse complaints," that women were "intimidated and forced to justify why they needed to complete [PREA] forms in the first place, " and that women who tried to report abuse were met with retaliation, including solitary confinement and wrongful disciplinary infractions which extended their incarceration.[1]

111.   Plaintiff J.M.F. has diligently pursued her rights by initiating this claim as soon as she felt some level of safety.

112.   Plaintiff J.M.F. has further demonstrated that she faced extraordinary circumstances preventing her from filing within the ordinary FTCA statutory period.

---

[1] Lisa Fernandez, FCI Dublin Special Master Finds 'Cascade Failures at Women's Prison, KTVU (Aug. 20, 2024), https://www.ktvu.com/news/fci-dublin-special-master-finds-cascade-failures-womens-prison; Lisa Fernandez, Special Master Issues 1st Report on FCI Dublin Sex Assault, KTVU (Aug. 19, 2024), https://www.ktvu.com/news/special-master-issues-1st-report-fci-dublin-sex-assault; Lisa Fernandez, FCI Dublin Special Master Authorized to Ensure Women Care for at Other Prisons: Judge, KTVU (May 21, 2024), https://www.ktvu.com/news/fci-dublin-special-master-authorized-to-ensure-women-cared-for-at-other-prisons-judge

113. Defendants are not entitled to benefit from their own misconduct. Equitable tolling of Plaintiff J.M.F.'s statute of limitations prevents this very result. Without the equitable tolling of Plaintiff's statute of limitations, Defendants would be rewarded for the very intimidation, retaliation, and constitutional violations that prevented Plaintiff from asserting her claim within the statutory period.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### GENDER VIOLENCE
### (against Defendant United States)
### (FTCA; Cal. Civ. Code § 52.4)

114. Plaintiff J.M.F. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

115. Plaintiff J.M.F. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against the United States based on the conduct of its employees, Smith, Cohen, and Ramos.

116. The United States is named as a defendant for the acts of these individual employees under the Federal Tort Claims Act.

117. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

118. Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

119. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

120. Officer Ramos and Defendants Smith and Cohen discriminated against Plaintiff J.M.F. based on her gender when they repeatedly sexually abused her by physically subjecting her to sexual acts.

121. By these acts, Officer Ramos and Defendants Smith and Cohen caused Plaintiff J.M.F. physical, mental, and emotional injuries as well as injury to her personal dignity.

## SECOND CLAIM FOR RELIEF
### GENDER VIOLENCE
**(against Defendants Smith and Cohen)**
**(FTCA; Cal. Civ. Code § 52.4)**

122.    Plaintiff J.M.F. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

123.    Plaintiff J.M.F. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against Defendants Smith and Cohen.

124.    These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

125.    Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

126.    Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

127.    Plaintiff has a nonfrivolous argument that Defendants Smith and Cohen bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

128.    Defendant Smith discriminated against Plaintiff J.M.F. based on her gender when he repeatedly sexually harassed her.

129.    Defendant Cohen discriminated against Plaintiff J.M.F. based on her gender when he repeatedly exposed her nude body for his own sexual gratification.

130.    By these acts, Defendants Smith and Cohen caused Plaintiff J.M.F. physical, mental, and emotional injuries as well as injury to her personal dignity.

## THIRD CLAIM FOR RELIEF
### SEXUAL ASSAULT
**(against Defendant United States)**
**(FTCA; California Common Law)**

131.    Plaintiff J.M.F. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

132. Plaintiff J.M.F. brings this claim for sexual assault under the Federal Tort Claims Act for violation of the rights conferred on her by California common law against the United States based on the conduct of its employees, Smith, Cohen, and Ramos.

133. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

134. Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

135. Officer Ramos and Defendants Smith and Cohen violated Plaintiff J.M.F.'s right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated.

136. Officer Ramos' and Defendants Smith's and Cohen's sexual abuse of Plaintiff J.M.F. was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

137. Officer Ramos and Defendants Smith and Cohen subjected Plaintiff J.M.F. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff J.M.F.'s person.

138. By intentionally subjecting Plaintiff J.M.F. to sexual acts, Officer Ramos and Defendants Smith and Cohen acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

139. By repeatedly subjecting Plaintiff J.M.F. to sexual acts, Officer Ramos and Defendants Smith and Cohen caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

### FOURTH CLAIM FOR RELIEF
### SEXUAL ASSAULT
### (against Defendants Smith and Cohen)
### (California Common Law)

140. Plaintiff J.M.F. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

141. Plaintiff J.M.F. brings this claim for sexual assault under California common law against Defendants Smith and Cohen.

142. Plaintiff has a nonfrivolous argument that Defendants Smith and Cohen bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

143. Defendants Smith and Cohen violated Plaintiff J.M.F.'s right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated.

144. Defendants Smith's and Cohen's sexual abuse of Plaintiff J.M.F. was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

145. Defendants Smith and Cohen subjected Plaintiff J.M.F. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff J.M.F.'s person.

146. By intentionally subjecting Plaintiff J.M.F. to sexual acts, Defendants Smith and Cohen acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

147. By repeatedly subjecting Plaintiff J.M.F. to sexual acts, Defendants Smith and Cohen caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

### FIFTH CLAIM FOR RELIEF
### SEXUAL BATTERY
### (against Defendant United States)
### (FTCA; Cal. Civ. Code § 1708.5)

148. Plaintiff J.M.F. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

149. Plaintiff J.M.F. brings this claim for battery under the Federal Tort Claims Act for violations of California Civil Code § 1708.5 against the United States for the conduct of its employees, Cohen and Ramos.

150. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

151. Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

152. Officer Ramos and Defendant Cohen committed battery against Plaintiff J.M.F. by repeatedly sexually abusing her while she was incarcerated as a minimum-security prisoner at FCI Dublin.

153. The sexual abuse of Plaintiff J.M.F., a prisoner, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

154. Officer Ramos and Defendant Cohen subjected Plaintiff J.M.F. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff J.M.F.'s person.

### SIXTH CLAIM FOR RELIEF
### SEXUAL BATTERY
### (against Defendants Smith and Cohen)
### (Cal. Civ. Code § 1708.5)

155. Plaintiff J.M.F. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

156. Plaintiff J.M.F. brings this claim for battery under California Civil Code § 1708.5 against Defendants Smith and Cohen.

157. Plaintiff has a nonfrivolous argument that Defendants Smith and Cohen bear individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

158. Defendant Smith committed battery against Plaintiff J.M.F. by forcing her to perform oral sex on him while she was incarcerated as a minimum-security prisoner at FCI Dublin.

159. Defendant Cohen committed battery against Plaintiff J.M.F. by repeatedly sexually abusing her while she was incarcerated as a minimum-security prisoner at FCI Dublin.

160. The sexual abuse of Plaintiff J.M.F., a prisoner, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

161. Defendants Smith and Cohen subjected Plaintiff J.M.F. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff J.M.F.'s person.

///
///
///

*J.M.F. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 14

## SEVENTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (against Defendant United States)
#### (FTCA; California Common Law)

162.    Plaintiff J.M.F. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

163.    Plaintiff J.M.F. brings this claim under the Federal Tort Claims Act for the intentional infliction of emotional distress against the United States based on the conduct of its employees, Officer Ramos and Defendants Smith and Cohen.

164.    These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

165.    Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

166.    Officer Ramos and Defendant Cohen engaged in outrageous conduct by repeatedly subjecting Plaintiff J.M.F. to sexual acts while she was incarcerated as a prisoner in their employer's custody. Defendant Smith engaged in outrageous conduct when he attempted to coerce Plaintiff J.M.F. to aid him in committing sexual acts against others. Each abused their authority over Plaintiff J.M.F. and their power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

167.    Officer Ramos' and Defendant Cohen's sexual abuse caused Plaintiff J.M.F. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. Defendant Smith's coercive efforts to have Plaintiff J.M.F. aid him in his sexual abuse of other prisoners also caused her to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

168.    Officer Ramos and Defendants Smith and Cohen intended to cause Plaintiff J.M.F. this emotional distress because they knew that emotional distress was likely to result from their sexual abuse of a prisoner.

///

## EIGHTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (against Defendants Smith and Cohen)
### (California Common Law)

169.    Plaintiff J.M.F. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

170.    Plaintiff J.M.F. brings this claim for the intentional infliction of emotional distress against Defendants Smith and Cohen.

171.    Plaintiff has a nonfrivolous argument that Defendants Cohen and Smith bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

172.    Defendant Cohen engaged in outrageous conduct by repeatedly subjecting Plaintiff J.M.F. to sexual acts while she was incarcerated as a prisoner in his employer's custody. Defendant Smith engaged in outrageous conduct when he attempted to coerce Plaintiff J.M.F. to aid him in committing sexual acts against others. Each abused their authority over Plaintiff J.M.F. and their power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

173.    Defendant Cohen's sexual abuse and Defendant Smith's attempted sexual abuse caused Plaintiff J.M.F. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

174.    Defendants Smith and Cohen intended to cause Plaintiff J.M.F. this emotional distress because they knew that emotional distress was likely to result from their sexual abuse of a prisoner.

## NINTH CLAIM FOR RELIEF
### BANE ACT
### (against all Defendants)
### (FTCA; Cal. Civ. Code § 52.1)

175.    Plaintiff J.M.F. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

176.    Plaintiff J.M.F. was in the custody and control of the United States during all relevant times.

177.    Officer Ramos and Defendants Smith and Cohen violated Plaintiff J.M.F.'s rights to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

178.    Defendant United States, by the actions of its employees, Officer Ramos and Defendants Smith and Cohen, interfered with Plaintiff J.M.F.'s right to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

179.    As a proximate result of these acts, Plaintiff J.M.F. sustained damage and injury.

**TENTH CLAIM FOR RELIEF**
**TRAFFICKING VICTIMS PROTECTION ACT**
**(against Defendant United States)**
**(18 U.S.C. § 1581, *et seq.*)**

180.    Plaintiff J.M.F. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

181.    Officer Ramos knowingly recruited, enticed, and solicited Plaintiff J.M.F. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

182.    Officer Ramos made Plaintiff J.M.F. engage in sex acts through force and coercion.

183.    Defendant Cohen preyed on Plaintiff J.M.F. in her vulnerable postictal state when she was helpless to prevent his actions, using his position of power to force and intimidate her into compliance and silence.

*J.M.F. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 17

184. Defendant Smith knowingly recruited, enticed, and solicited Plaintiff J.M.F. by offering benefits and things of value, such as not being placed in the SHU, for assisting him in engaging in sex acts with other prisoners.

185. Defendant United States knew of, or should have reasonably known, that Officer Ramos and Defendants Smith and Cohen were soliciting Plaintiff J.M.F. in exchange for sex acts, and benefited by failing to protect Plaintiff J.M.F.

186. This conduct has caused Plaintiff J.M.F. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

## ELEVENTH CLAIM FOR RELIEF
### CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 52.5)**

187. Plaintiff J.M.F. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

188. Officer Ramos knowingly recruited, enticed, and solicited Plaintiff J.M.F. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

189. Officer Ramos made Plaintiff J.M.F. engage in sex acts through force and coercion.

190. Defendant Cohen preyed on Plaintiff J.M.F. in her vulnerable postictal state when she was helpless to prevent his actions, using his position of power to force and intimidate her into compliance and silence.

191. Defendant Smith knowingly recruited, enticed, and solicited Plaintiff J.M.F. by offering benefits and things of value, such as not being placed in the SHU, for assisting him in engaging in sex acts with other prisoners.

192. Defendant United States knew or should have known that Officer Ramos and Defendants Smith and Cohen were engaged in these activities and intentionally placed Plaintiff J.M.F. at greater risk of harm and/or failed to act in a manner that protected Plaintiff J.M.F. from harm.

193.  Defendant United States employed Officer Ramos and Defendants Smith and Cohen, whose actions and/or inactions occurred while they were acting as a federal employee under the color of law.

194.  This conduct has caused Plaintiff J.M.F. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

**TWELFTH CLAIM FOR RELIEF**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**(against Defendants Smith and Cohen)**
**(Cal. Civ. Code § 52.5)**

195.  Plaintiff J.M.F. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

196.  Defendant Cohen preyed on Plaintiff J.M.F. in her vulnerable postictal state when she was helpless to prevent his actions, using his position of power to force and intimidate her into compliance and silence.

197.  Defendant Smith knowingly recruited, enticed, and solicited Plaintiff J.M.F. by offering benefits and things of value, such as not being placed in the SHU, for assisting him in engaging in sex acts with other prisoners.

198.  Defendant Cohen made Plaintiff J.M.F. engage in sex acts through force and coercion.

199.  Defendant United States knew or should have known that Defendants Smith and Cohen were engaged in these activities and intentionally placed Plaintiff J.M.F. in greater risk of harm and/or failed to act in a manner that protected Plaintiff J.M.F. from harm.

200.  This conduct has caused Plaintiff J.M.F. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

**PRAYER FOR RELIEF**

201.  Plaintiff J.M.F. prays for judgment against Defendant, and each of them, as follows:

(a)  An award of damages, including compensatory, special, punitive, and nominal damages, to Plaintiff J.M.F. in an amount to be determined at trial;

(b)  An award to Plaintiff J.M.F. of the costs of this suit and reasonable attorneys' fees and litigation expenses, including expert witness fees; and

(c)    For such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff J.M.F. hereby respectfully demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: January 9, 2026

SIEGEL, YEE, BRUNNER & MEHTA

By:_____
       EmilyRose Johns

THE LAW OFFICE OF DEBORAH M. GOLDEN

By: /s/ *Deborah M. Golden*
       Deborah M. Golden

DC Bar # 470-578
Motion for *pro hac vice* forthcoming

*Attorneys for Plaintiff*